UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

LAWRENCE MIKEL,

                     Petitioner,                    04-CV-6448 (CJS)(VEB)

     -vs-

                                               DECISION AND ORDER

ANTHONY F. ZON, Superintendent
of Wende Correctional Facility,

                     Respondent.

_____

APPEARANCES

For the Petitioner:          Howard K. Broder, Esq.
                               2000 Winton Road South
                               Building 4, Suite 100
                               Rochester, New York 14618

For the Respondent:        Loretta S. Courtney, Esq.
                               Office of the Monroe County District Attorney
                               832 Watts Building
                               Rochester, New York 14614

INTRODUCTION

     Petitioner Lawrence Mikel ("Petitioner") seeks a writ of habeas corpus, pursuant

to 28 U.S.C. § 2254, vacating his convictions in New York State Supreme Court,

Monroe County, of Murder in the Second Degree, Robbery in the First Degree, Grand

Larceny in the Fourth Degree, and Criminal Possession of a Weapon in the Second

1

Degree.  Now before the Court are Petitioner's Objections [#10] to a Report and Recommendation [#9] of the Honorable Victor E. Bianchini, United States Magistrate Judge, which recommended the denial of the petition.  For the reasons that follow, the Court denies Petitioner's objections and adopts the Report and Recommendation in all respects.

BACKGROUND

The facts of this case were detailed in the Report and Recommendation and need not be repeated here.  It is sufficient to note that Petitioner's convictions arise from the robbery and murder of two individuals, Terry Floyd and Mary Adamski, in two separate and unrelated incidents in the City of Rochester.  Petitioner gave a statement to police in which he admitted participating in the robberies but denied shooting the victims.[1]  Petitioner was tried and convicted in 1994, however, the convictions were reversed because the trial court had submitted an annotated verdict sheet to the jury. *See, People v. Mikel*, 237 A.D.2d 982, 654 N.Y.S.2d 907 (4th Dept. 1997).

In 1997 Petitioner's second trial was held before the Honorable Donald Mark, Supreme Court Justice.  During voir dire, Justice Mark asked potential jurors if they or anyone close to them had "been arrested for, charged with, or accused of the commission of any type of crime."  The prosecutor subsequently asked potential jurors if they had ever visited anyone in jail.  Significantly, a potential juror named Sharon Pearce ("Pearce") did not respond to either question, though other potential jurors did. Pearce was eventually selected to sit on the jury.  Subsequently, during juror

---

[1]A cooperating witness testified at trial that Petitioner shot Adamski in the back of the head.

2

deliberations, a juror informed the court that Pearce told her fellow jurors that she knew someone who had been convicted based upon a false statement.  Justice Mark brought Pearce into court and questioned her, in the presence of Petitioner, the prosecutor, and defense counsel.  Pearce acknowledged that her brother had been prosecuted for murder by the Monroe County District Attorney thirteen years earlier and had been convicted.  Ms. Pearce further indicated that the police had done "a lot of things wrong" in the case, such as lying about having advised her brother of his rights.  Pearce further indicated that she had visited her brother in prison, that she believed he was illegally convicted, and that her family was considering an appeal.

When asked why she did not respond to the pertinent questions during voir dire, Pearce initially indicated that she did not "recall" failing to answer, then stated, "I really didn't think that you people – I didn't think I would be picked."  Ultimately, Pearce indicated that she chose not to answer the questions because she did not think they were important.  Nevertheless, Pearce repeatedly indicated that she could be a fair and impartial juror.

Justice Mark concluded that Pearce was "grossly unqualified" to continue as a juror, and removed her pursuant to New York Criminal Procedure Law ("CPL") § 270.35(1). (Voir Dire Transcript pp. 62-63) ("[S]he did not honestly respond to the questions and the Court finds her grossly unqualified.").  Additionally, Justice Mark declared a mistrial because there were no alternate jurors to replace Pearce.

Petitioner subsequently sought a writ of prohibition to prevent a re-trial, on Double Jeopardy grounds, however the New York State Supreme Court, Appellate Division, denied the request, finding that Pearce had been properly removed for failing

3

to answer questions truthfully during voir dire and ignoring the instructions of the court. The New York Court of Appeals denied Petitioner's appeal. In 1999 Petitioner's third trial resulted in the convictions from which he now seeks relief.

After exhausting his appeals, Petitioner filed the subject habeas petition, contending that his convictions violated the Double Jeopardy Clause of the Fifth and Fourteenth Amendments. The undersigned referred the matter to Magistrate Judge Bianchini for a Report and Recommendation. The Report and Recommendation concluded that Petitioner's habeas claim lacks merit. In his Objections [#10], Petitioner contends that the magistrate judge failed to properly evaluate whether Pearce's removal from the jury comported with New York State law. Specifically, Petitioner indicates that the trial court's "failure to follow its own standard for removing a sworn juror and the consequent lack of manifest necessity for a mistrial involved an unreasonable application of clearly established constitutional law under United States Supreme Court precedent." Alternatively, Petitioner maintains that "the trial judge's decision to dismiss the juror was based on an unreasonable determination of the facts." Petitioner alleges that Pearce should not have been dismissed without a finding that she was "obviously" unfit, and that Justice Mark failed in that regard because he dismissed Pearce based upon her failure to answer the court's questions without determining whether she could be impartial nonetheless.

DISCUSSION

Rule 72(b) of the Federal Rules of Civil Procedure provides that where a Magistrate Judge issues a Report and Recommendation "dispositive of a claim or defense of a party,"

4

> [w]ithin 10 days after being served with a copy of the recommended
> disposition, a party may serve and file specific, written objections to the
> proposed findings and recommendations. . . .  The district judge to whom
> the case is assigned shall make a de novo determination upon the record,
> or after additional evidence, of any portion of the magistrate judge's
> disposition to which specific written objection has been made in
> accordance with this rule. The district judge may accept, reject, or modify
> the recommended decision, receive further evidence, or recommit the
> matter to the magistrate judge with instructions.

FRCP 72(b) (Thomson/West 2007).

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996, ("AEDPA"), a federal court may grant habeas corpus relief only if the State court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or which "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). *Aparicio v. Artuz*, 269 F.3d 78, 93 (2d Cir. 2001).  Moreover, "a determination of a factual issue made by a State court shall be presumed to be correct," unless the Petitioner rebuts that presumption by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

It is well-settled that "[e]rrors of state law are not reviewable on a habeas petition unless they rise for some other reason to the level of a denial of rights protected by the United States Constitution." *Mirrer v. Smyley*, 703 F.Supp. 10, 12 (S.D.N.Y. 1989) (citations and internal quotation marks omitted), *aff'd* 876 F.2d 890 (2d Cir. 1989), *cert. den*. 493 U.S. 850, 110 S.Ct. 148 (1989); *see also, Hameed v. Jones*, 750 F.2d 154, 160 (2d Cir. 1984) ("Federal habeas corpus is not, of course, available simply by virtue

of a violation of state criminal law."), *cert. den*. 471 U.S. 1136, 105 S.Ct. 2677 (1985).

Further, it is clear that

> [w]here, for reasons deemed compelling by the trial judge, who is best situated intelligently to make such a decision, the ends of substantial justice cannot be attained without discontinuing the trial, a mistrial may be declared without the defendant's consent and even over his objection, and he may be retried consistently with the Fifth Amendment.

*Gori v. U.S.*,  367 U.S. 364, 368, 81 S.Ct. 1523, 1526 (1961).  "As a general rule, a reviewing court is charged with determining whether the trial court's decision that a mistrial was justified by manifest necessity was an abuse of discretion." *Williams v. Bartow*, 481 F.3d 492, 500 (7th Cir. 2007) (citation omitted).  Moreover, where the decision to declare a mistrial involved an issue related to possible juror bias, the trial court's ruling is entitled to special deference:

> There are compelling institutional considerations militating in favor of appellate deference to the trial judge's evaluation of the significance of possible juror bias.  He has seen and heard the jurors during their voir dire examination. He is the judge most familiar with the evidence and the background of the case on trial. . . .   In short, he is far more conversant with the factors relevant to the determination than any reviewing court can possibly be.

*Arizona v. Washington*, 434 U.S. 497, 513-514, 98 S.Ct. 824, 834 (1978) (citations and internal quotation marks omitted); *see also, Id*. at n. 33 ("These considerations must be at least as weighty where a federal court, in considering a state prisoner's collateral challenge to his conviction on the ground that it violated the Double Jeopardy Clause, reviews the determination of a state trial judge as to juror bias.").

In this case,  Petitioner admits that if juror Pearce was properly removed, then the trial court was required to declare a mistrial, since there were no alternate jurors.

As Petitioner sees it, "[t]he operative issue in this case is whether the juror was properly removed in accordance with state policy." (Objections p. 6).  Petitioner essentially argues that the state trial court failed to properly apply CPL § 270.35(1), and that consequently there was no "manifest necessity" to declare a mistrial.[2] (Pet. Memo of Law [#2] pp. 8-9).  Alternatively, Petitioner contends that the trial court's determination that Pearce was "grossly unqualified" was based on an unreasonable determination of the facts.  The Court disagrees with both arguments.

As already discussed, Justice Mark removed Pearce pursuant to CPL § 270.35(1), which states, in relevant part, that

> [i]f at any time after the trial jury has been sworn and before the rendition of its verdict . . . the court finds, from facts unknown at the time of the selection of the jury, that a juror is grossly unqualified to serve in the case or has engaged in misconduct of a substantial nature . . . the court must discharge such juror.

McKinney's CPL § 270.35.  Interpreting this provision, the New York Court of Appeals has held that "the standard for disqualifying a sworn juror over defendant's objection (i.e., 'grossly unqualified') is satisfied only when it becomes obvious that a particular juror possesses a state of mind which would prevent the rendering of an impartial verdict." *People v. Buford*, 69 N.Y.2d 290, 298, 514 N.Y.S.2d 191, 195 (1987) (citation and internal quotation marks omitted).  Petitioner maintains that Justice Mark failed to apply this standard, and instead "reflexively removed" Pearce from the jury based upon

---

[2]Petitioner relies on *Illinois v. Somerville*, 410 U.S. 458, 459 (1973).  However, the Court does not believe that the *Illinois v Somerville* decision is helpful to Petitioner, because, in addition to reiterating that judges generally have broad discretion to declare mistrials, it stated that "there have been instances where a trial judge has discovered facts during a trial which indicated that one or more members of the jury might be biased against the Government or the defendant. It is settled that the duty of the judge in this event is to discharge the jury and direct a retrial." *Id.*, 410 U.S. at 470, 93 S.Ct. at 1073.

her failure to answer the pertinent questions during voir dire.  However, this argument finds no support in the record.  Justice Mark, as well as the prosecutor and defense counsel, questioned Pearce at length, and her answers indicate not only that she was almost certainly biased against the prosecution, but also that she felt free to disregard the court's instructions.

Petitioner appears to place great emphasis on Pearce's insistence that she was impartial.  However, Justice Mark, being in the best position to observe Pearce and make a factual determination as to her credibility, obviously disbelieved her.  That determination is entitled to great deference.  In any event, the record amply supports the finding that Pearce was grossly unqualified.  As just one example of Pearce's lack of candor, she initially indicated that she did not recall being asked the pertinent questions, only to admit later that she decided not to answer the questions because she did not think they were important.  Nevertheless, during jury deliberations Pearce relied on the withheld information to suggest to her fellow jurors that Petitioner's statement to police was coerced.  The Court therefore concludes that Justice Mark neither abused his discretion nor made an unreasonable determination of the facts.

CONCLUSION

The Court has conducted a de novo review of the Report and Recommendation and finds no error.  Consequently, Petitioner's Objections [#10] are denied, and Magistrate Judge Bianchini's Report and Recommendation [#9] is accepted. Petitioner's application for a writ of habeas corpus is denied, and this action is dismissed.  Because Petitioner has not made a substantial showing of a constitutional right pursuant to 28 U.S.C. § 2253(c)(2), the Court declines to issue a Certificate of

Appealability.  The Court further certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States*, 369 U.S. 438 (1962).  Further requests to proceed on appeal *in forma pauperis* should be directed on motion to the United States Court of Appeals for the Second Circuit in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

      SO ORDERED.

Dated:      October 19, 2007
               Rochester, New York

                           ENTER:


                          /s/ Charles J. Siragusa_____
                         CHARLES J. SIRAGUSA
                         United States District Judge